# SUPREME COURT,

## STATE OF KANSAS.

## JULY TERM, 1894.

PRESENT:

Hon. ALBERT H. HORTON, Chief Justice.
Hon. WILLIAM A. JOHNSTON, } Associate Justices.
Hon. STEPHEN H. ALLEN,

*In the matter of the Petition of* J. D. SIMS *for a Writ of Habeas Corpus.*

CONTEMPT—*Power of County Attorneys—Invalid Section of Statute.* Paragraph 2543 of the General Statutes of 1889, so far as it attempts to confer on county attorneys the power to commit witnesses for contempt, on account of a refusal to be sworn or testify as provided in this section, is unconstitutional and void.

*Original Proceeding in Habeas Corpus.*

ALL the material facts of this case are stated in the opinion herein, filed July 6, 1894.

*Oscar Foust & Son,* for petitioner:

Our contention is that the power sought to be conferred by chapter 149, Laws of 1885, is violative of both the constitution of the state of Kansas and the constitution of the United States, and hence is void. We say it is especially in violation of §§ 5 and 15 of the bill of rights of the constitution of Kansas, and of articles 5 and 14 of the amendments to the constitution of the United States. The legislature cannot exercise

1—54 KAS.

a power retained by the people, or not delegated by the people to the legislature. *Comm'rs of Leavenworth Co. v. Miller*, 7 Kas. 479. See, also, *Anderson v. Dunn*, 6 Wheat. 233, 234; *Whitcomb's Case*, 120 Mass. 118.

The county attorney is not a legislature, neither is he a court, nor is he vested with any judicial functions whatever. His duties have been clearly defined. Gen. Stat. of 1889, ¶ 1796.

The power to punish for contempt is the highest exercise of judicial power, and is not an incident to the mere exercise thereof. While it may be conceded that all officers in the land who have the slightest discretion as to their duty possess power of a judicial nature, yet nothing can be clearer upon principle and authority than that such officer is not a judicial officer within the meaning of the constitution, though possessing power of a *quasi* judicial nature. The question whether the legislature could confer on such officers the power to commit to prison for contempt the citizens of the state depends upon whether such action is purely judicial or only *quasi* judicial. See *Ex parte Doll*, 7 Phil. 595; *In re Mason*, 43 Fed. Rep. 510; *Langenberg v. Decker*, 16 L. R. A. 108; also reported in 31 N. E. Rep. 190, and in a very clear and exhaustive opinion the power was denied.

See, also, *Attorney General v. McDonald*, 3 Wis. 805; *Kilbourn v. Thompson*, 103 U. S. 182; *Holman v. The State*, 105 Ind. 513; *People v. Maynard*, 14 Ill. 419; *Perkins v Corbin*, 45 Ala. 103; *Greenough v. Greenough*, 11 Pa. St. 489; *Telegraph Company v. National Bank*, 74 Ill. 217; *Harris v. Vandeveer*, 21 N. J. Eq. 424.

*A. H. Campbell*, for respondent; *Ewing & Bennett*, of counsel:

Unless the enactment under consideration is clearly unconstitutional, it should be upheld. *The State, ex rel., v. Robinson*, 1 Kas. 17; *City of Atchison v. Bartholow*, 4 id. 124; *Comm'rs of Leavenworth Co. v. Miller*, 7 id. 479, 12 Am. Rep. 425; *Comm'rs of Cherokee Co. v. The State, ex rel.*, 36 Kas. 337.

The enactment is not unconstitutional. There is nothing in the constitution of either this state or of the United States forbidding such a grant of power by the legislature.

Where the constitution provides that judicial power of the state shall be vested in specified courts, and "in such other courts as the legislature may from time to time establish," the legislature may vest a part of the jurisdiction of the constitutional courts in those tribunals which it creates by statute. 3 Am. & Eng. Encyc. of Law, p. 694.

It is not necessary that the legislature, in order to confer judicial power, should first in terms create a court. *Malone v. Murphy*, 2 Kas. 250; *The State v. Young*, 3 id. 445; *Prell v. McDonald*, 7 id. 426, 12 Am. Rep. 423.

Such power may even be conferred on a ministerial or administrative officer. *Ross v. Comm'rs of Crawford Co.*, 16 Kas. 418; *Matthews v. Comm'rs of Shawnee Co.*, 34 id. 606.

The very fact of the omission from the constitution of a grant of power to commit for contempt indicates that the framers of the constitution and the people who adopted it, recognized the settled rule of the law that such power is inherent in all courts and officers exercising judicial functions. See 3 Am. & Eng. Encyc. of Law, p. 799, n. 1 and 2.

Such right at least has been constantly exercised by the legislature, by all courts in the state, and by notaries public, with the sanction and approval of this court. *In re Gunn*, 50 Kas. 155, 19 L. R. A. 519.

Where a witness duly subpoenaed to testify in a cause before a notary public by giving his deposition refuses to testify, he may be committed by the notary for contempt for such refusal. *In re Abeles*, 12 Kas. 451; *In re Merkle*, 40 id. 27.

It was never intended that any case for contempt should be tried by a jury. *The State v. Cutler*, 13 Kas. 131, and *The State, ex rel., v. City of Topeka*, 36 id. 76, 59 Am. Rep. 529.

*Langenberg v. Decker*, 16 L. R. A. 108, 131 Ind. 471, cited by petitioner, is based wholly on the peculiar wording of the constitution of the state of Indiana.

In support of the enactment under consideration, see *In re Clayton,* 59 Conn. 510, 13 L. R. A. 66; *The State v. Seaton,* 61 Iowa, 563.

The opinion of the court was delivered by

ALLEN, J.: The petitioner was restrained of his liberty by the sheriff of Allen county, under a commitment issued by the county attorney for refusal to answer questions propounded to him touching violations of the prohibitory liquor law. Paragraph 2543 of the General Statutes of 1889 makes it the duty of the county attorney, when notified of any violation of the prohibitory law, to issue his subpœna commanding witnesses to appear before him, to swear such witnesses, examine them, reduce their testimony to writing, and cause it to be subscribed by such witnesses, and expressly authorizes the county attorney to punish for contempt any witnesses disobeying his process or refusing to answer questions. If the testimony so taken discloses the fact that an offense has been committed, he is required forthwith to file the statements of the witnesses with his complaint or information against the person having committed the offense, and thereupon to proceed with the prosecution of the offender.

The single question presented for our consideration is, whether that portion of the statute which authorizes the county attorney to punish as for contempt is in violation of the constitution of this state. Nothing is more firmly fixed in the governmental systems of all English-speaking countries than the division of powers between the three great departments of government, the executive, legislative, and judicial. The question before us is whether the legislature has power to confer on an executive officer charged with the duty of searching out violations of the law, inquiring into facts, instituting and carrying on prosecutions for violations of the criminal laws of the state, the power, at the same time and as ancillary to the performance of his duties as a prosecuting officer, to commit persons to jail as for a contempt of his authority. That a proceeding to punish for contempt is in

its nature a criminal proceeding, has been directly decided by this court (*The State v. Dent*, 29 Kas. 416) as well as by the courts of other states. (*Cartwright's Case*, 114 Mass. 230; *Puterbaugh v. Smith*, 23 N. E. Rep. [Ill.] 428.)

The right to appeal from an order punishing for a contempt has been frequently recognized by this court. (*Peyton's Appeal*, 12 Kas. 398; *In re Dalton*, 46 id. 253; *The State v. Henthorn*, 46 id. 613; *The State v. Vincent*, 46 id. 618; *In re Nickell*, 47 id. 734; *In re Noonan*, 47 id. 771; *In re Harmer*, 47 id. 262; *The State, ex rel., v. Durein*, 46 id. 695.) An appeal to a superior court can only be taken from a judicial decision, never from one involving merely executive or legislative discretion. (*Fulkerson v. Comm'rs of Harper Co.*, 31 Kas. 125; *Kent v. Comm'rs of Labette Co.*, 42 id. 534.) In committing the prisoner for contempt, the county attorney therefore decided a case in its nature criminal, and, in making such decision, assumed to act in a judicial capacity. That the statute referred to gives him this power in terms is clear. Is the statute valid? The cases of *In re Abeles*, 12 Kas. 451, and *In re Merkle*, 40 id. 27, are cited in support of the proposition that power to commit for contempt may be given to other than a judicial officer, and it is said that it is not necessary in order to confer judicial power that the legislature should first in terms create a court. The constitution of this state provides that "the judicial power of this state shall be vested in a supreme court, district courts, probate courts, justices of the peace, and such other courts inferior to the supreme court as may be provided by law." (Art. 3, § 1.) The legislature, therefore, is at liberty to confer judicial power, and to create courts inferior to the supreme court. It may be conceded that the legislature may confer judicial power on an individual who also fills an executive office. The prior decisions of this court go no further than this. The point here involved, whether executive and judicial power may be mingled and combined, may be exercised by the same person at the same time and in the same proceeding, has never yet been decided by this court.

The county attorney is peculiarly an executive officer. He is not only authorized to appear on behalf of the state and prosecute all criminal cases arising in his county, but it is his duty to do so; and the act concerning the sale of intoxicating liquors imposes on him the specific duty of making inquiries and investigations for the purpose of detecting violations of the prohibitory law, to compel witnesses to testify, to reduce their statements to writing, to cause them to be signed by the witnesses, to file them in the district or other court having jurisdiction, and with them his complaint or information, charging offenders with such offenses as the testimony shows they are guilty of. In all these proceedings the county attorney acts as an administrative officer, prosecuting on behalf of the people. It is for the purpose of aiding him in the effectual execution of this duty that the power to commit for contempt is given him. It is given to him, not as a judicial officer, but as county attorney, and for the very purpose of aiding him in performing the duties of that office. Such a combination of powers is not in accordance with the theory of our government nor with the orderly administration of justice as administered in this country and in England. The power to punish for contempt is never exercised except by legislative bodies or judicial officers. ( *Whitcomb's Case,* 120 Mass. 118; *Langenberg v. Decker,* 31 N. E. Rep. [Ind.] 190; *Kilbourn v. Thompson,* 103 U. S. 168; *Attorney General v. McDonald,* 3 Wis. 703.)

It is sought to distinguish the case before us from those cited because of provisions in the constitutions of Wisconsin and Indiana with reference to the separation of executive and judicial powers. We think, however, that in our constitution these powers are as clearly separated as though the framers of the constitution had said so in terms. It needs but a suggestion to show that the combination of executive and judicial powers may become tyranny at once. The advancement in the science of government made in modern times is due to the separation of the three great coördinate departments. If the legislature may confer on the county

attorney one of the highest and most distinctive attributes of judicial power, that of punishing for contempt, to aid him in ascertaining from witnesses the facts with reference to violations of law, might the legislature not also confer on any attorney the power to examine witnesses in civil cases in the same manner, and to commit them for contempt if they refuse to answer his questions? Might it not also give to any executive officer from the governor down the power to subpœna witnesses to inform his judgment and to aid him in any executive decision or determination? And if the rule is established, can it be doubted that the division between executive and judicial offices will be completely broken down, and all constitutional barriers removed from those forms of oppression which have always attended this combination? In this very case, the county attorney, as a prosecuting officer, issued his subpœna. When the witness came before him as a prosecuting officer, he asked him a question. When the witness refused to answer, he at once passed on his own right to ask the question, on its pertinency and propriety, judicially determined that he, as prosecuting attorney, had asked a proper question, and, as a judicial officer, declared and determined that the witness was guilty of a judicial contempt in refusing to answer the question which he himself had asked as a prosecuting attorney. This is a commingling and confusing of executive and judicial functions in a manner incompatible with the constitution, obnoxious to its whole spirit and to the spirit of free institutions, and the act to that extent is void.

The petitioner will be discharged.

HORTON, C. J., and JOHNSTON, J., concurring specially.

HORTON, C. J.: Paragraph 2543, Gen. Stat. of 1889, confers upon county attorneys of the state, when notified of any violation of the provisions of the prohibitory liquor law, the power to inquire into such violation, and for that purpose they are authorized to issue subpœnas for any person they be-

lieve has information or knowledge thereof to appear before them and testify. The testimony in every case must be reduced to writing and signed by the witness, the same as a deposition in a civil cause. Power is also attempted to be conferred upon county attorneys to imprison any witness for refusal to testify concerning any violation of the statute, when required to do so. (Laws of 1885, ch. 149, § 8.) Paragraph 2543 further provides that, if the testimony taken discloses that any offense has been committed against the provisions of the statute, the county attorney taking the testimony must file the statement of the witness and a complaint or information against the offender in some court of competent jurisdiction. The complaint or information may then be verified by the county attorney upon information and belief.

All of the provisions of the statute are for the purpose of assisting county attorneys in procuring testimony for violations of the act and in preparing their cases for successful prosecution in the court. So far as the power conferred by the statute is ministerial or administrative, it is constitutional, and must be obeyed; but if a witness refuses to testify, I do not think county attorneys have, or ought to have, the power to imprison such a witness for contempt. County attorneys are executive or administrative officers; but the power attempted to be conferred upon them, or any other officer taking depositions or testimony, to commit a witness for refusing to answer, is judicial in character. (*Kilbourn v. Thompson,* 103 U. S. 168.) If the statute is constitutional and open to no legal objection, county attorneys have the power to ask questions of the witnesses brought before them, and then to pass upon the competency or pertinency of the same, and, if the witness refuses to answer, to imprison him in the county jail, there to remain until he submits to testify. It is an old maxim of the law that "no man can be a judge in his own cause." This wise maxim is infringed upon by conferring on a prosecuting attorney judicial power to commit a witness called before him to testify in a case which he is preparing for trial, or in which he proposes, if his investigation warrants, to file

a complaint or information. In such a proceeding, on the examination of a witness, the prosecuting attorney has a pecuniary, professional and official interest. He is not acting disinterestedly. The statute would be very similar, and liable to like objection, if it authorized notaries public and attorneys at law to personally take depositions or perpetuate testimony · in actions they were intending to commence for the other parties. In a civil action, no deposition or affidavit can be taken before a relative, or an attorney of either party, or before anyone interested in the event of the proceeding. (Civil Code, § 350; *Foreman v. Carter*, 9 Kas. 681; *Warner v. Warner*, 11 id. 121.) The rule in criminal cases ought to be as strict.

The legislature has full authority to confer the power to imprison a witness for contempt, prescribed in ¶ 2543, upon justices of the peace, probate judges, notaries public, clerks of courts, or any individual, not the prosecuting attorney, or interested in the proceeding. I fully concur in the judgment pronounced in *In re Clayton*, 59 Conn. 510, but some of the reasons given are not satisfactory to me. In that case the examination was taken before a police judge, not before a prosecuting attorney or anyone interested in commencing criminal proceedings upon the testimony which it was sought to compel the witness to disclose. I am of the opinion, as observed in that case, that "it is the duty of all good citizens, when legally required so to do, to testify to any facts within their knowledge affecting public interest, and no one has a natural right to be protected in his refusal to discharge this duty. Public policy does not forbid, but on the contrary often requires, legislation to facilitate the administration of justice." But the power to compel a citizen to testify should be exercised legally, not unconstitutionally. If this ruling shall in any way interfere with full and successful investigations on the part of county attorneys of violations of the provisions of the prohibitory liquor law, it can be remedied speedily. The legislature will convene in a few months, and the power to imprison recusant witnesses, attempted to be conferred upon county attorneys by ¶ 2543, may, as before

stated, be constitutionally and legally imposed upon any officer or individual. not the county attorney or otherwise interested in the proceeding.

My attention has been called recently to the case of *De Camp v. Archibald*, 38 Cent. L. J. (Ohio), 186, ruling that the power to commit a person for contempt for refusing to answer is not judicial in character. That decision, although made by an able court, is not supported by logical reasoning, is not in line with our own decisions, and is opposed to the great weight of authority.


JOHNSTON, J.: In the enactment of the provisions authorizing the county attorney to make preliminary inquiry as to the commission of offenses, the legislature appears to have proceeded upon the theory that the duties imposed and power conferred in that respect were not judicial in character. If they were executive or merely *quasi* judicial in their nature, the objections urged against the statute would be without force; and the fact that they were imposed and conferred upon an executive officer indicates the legislative view, and may be some argument that they are not judicial. Some of the steps in the preliminary inquiry are clearly the exercise of executive functions, and whether or not any of them are judicial must be determined from their nature, rather than from the position or station of the one by whom the act is to be performed. Assuming that the authority to punish for contempt was an incident to the exercise of executive power, the legislature vested it in the county attorney; and this is not to be wondered at, in view of the fact that the supreme court of Ohio, in a recent case, has determined that the exercise of such authority is not the exercise of judicial power. (*De Camp v. Archibald*, 35 N. E. Rep. 1056.) Although I entertain the highest respect for that tribunal, I am unable to reach the same conclusion.

The authority to hear and determine a controversy upon both the facts and the law is judicial power. When the wit-

ness refuses to answer the question proposed, the county attorney must then determine upon the propriety of the question, and whether, under the circumstances, an answer should be compelled. At that stage of the proceedings an issue is formed, and a controversy arises between the state and the witness. A contempt of court is a substantive criminal offense, and to adjudicate a case of contempt and to impose punishment for such offense is generally said to be the highest exercise of judicial power. The county attorney not only inquires and decides, but he is given full power to enforce his decision, and that by one of the most severe methods known to the law. The authority to try one accused of a criminal offense, pronounce judgment against him and enforce that judgment by imprisonment is surely an exercise of judicial power. If, then, the power is to be regarded as judicial, it can only be exercised by one of the tribunals mentioned in § 1 of article 3 of the constitution. Under this constitutional provision, the legislature may vest judicial power in such courts as it may see fit to create, provided only that they are inferior to the supreme court. Can the county attorney be regarded as a court within the meaning of this constitutional provision?

The contention of the state, that the legislature may create a court or confer judicial power without designating the tribunal created as a court, must be conceded. (*Malone v. Murphy*, 2 Kas. 250; *The State v. Young*, 3 id. 445.) I am unable, however, to sustain the position of the petitioner, and hold that the vesting of judicial power in an executive officer, and requiring him to perform both executive and judicial functions, is a sufficient objection to the statute. It is highly important to separate the legislative, judicial and executive functions, and that the officer of one department should not exercise the functions conferred upon another. Under our system, however, the absolute independence of the departments, and the complete separation of the powers is impracticable, and was not intended.

"It is true, with some exceptions, that the legislature can-

not exercise judicial or executive power, that the courts cannot exercise legislative or executive power, and that the executive department cannot exercise legislative or judicial power; but it is not true that they are entirely separate from each other, or independent of each other, or that one of them may not in some instances control one of the others." (*Martin v. Ingham*, 38 Kas. 654.)

The governor has been vested with some judicial functions, and the legislature acts judicially when it tries a charge of contempt, and adjudges punishment therefor. Ministerial duties have been placed upon courts, and while scrupulous care should be used to prevent an officer of one department from intruding to any extent upon the duties conferred upon an officer of another department, nothing in our state constitution, as there is in that of some other states, prevents the vesting of more than one function in a single individual. Illustrations of conferring more than one of these powers upon the same person are numerous. It has been held that the mayor of a city of the second class might, while acting as mayor, exercise the powers of a court, although the statute did not in terms create him a court. (*Prell v. McDonald*, 7 Kas. 426.) Judicial powers have been conferred on county commissioners and coroners, whose duties are mainly ministerial. Probate judges, whose duties are mostly judicial, have had conferred upon them many ministerial duties, and legislation giving such powers has been upheld. (*In re Johnson*, 12 Kas. 102; *Intoxicating-Liquor Cases*, 25 id. 759.)

Other instances might be cited, but these are sufficient to show that the legislature may confer judicial powers upon an executive officer, provided such duties are not inconsistent with those required of such officer. No case has been sustained, however, where the new duties conferred upon an officer were incompatible with those already imposed by such office. When the petitioner refused to answer the question, and a controversy arose, he was, in effect, accused of an offense. The state was the plaintiff, and the petitioner the de-

fendant. The county attorney is the representative of the state, and required to appear in all prosecutions in its behalf. When the issue was thus formed, the positions of county attorney and judge became antagonistic, and the duties of the respective places incompatible. It is not within the power of the legislature to make a judge an arbiter in his own cause, and to give an attorney for one of two adverse parties the power to determine the controversy is wholly inconsistent with our system of jurisprudence. The legislature has not clothed the county attorney with the paraphernalia of a court, and it does not seem to have been its purpose to invest him with the attributes of a judicial tribunal. Manifestly, it proceeded upon the theory that the powers conferred were such as might be carried out by an executive officer, and are not "judicial" within the meaning of the constitution. As that view cannot be sustained, and as the authority to punish for contempt must be regarded as the exercise of judicial power, it follows that the statute cannot be upheld.