DICKINSON, STATE AUDITOR, *v.* JOHNSON.

Opinion delivered April 19, 1915.

1. LEGISLATURE—CONCURRENT RESOLUTION—EFFECT.—Under § § 21 and 22, art. 5, Const. 1874, all laws of the State must be passed by bill, and a concurrent resolution of both houses of the General Assembly can not be used to enact a law.

2. STATE GOVERNMENT—INVESTIGATION OF STATE DEPARTMENTS—LEGISLATIVE FUNCTION.—The investigation into the management of the

various institutions of the State and the departments of the State government, is a legitimate function of the Legislature.

3. STATE GOVERNMENT—COMMITTEES OF GENERAL ASSEMBLY—APPOINTMENT.—The houses of the General Assembly may by concurrent resolution appoint a committee to investigate the management of a State institution, and as long as the General Assembly is in session it has full control over the committee, but when it is necessary to continue the work of investigation after adjournment of the General Assembly, the committee could only be constituted by a bill enacting a law to that effect.

4. STATE GOVERNMENT—LEGISLATIVE COMMITTEES—APPOINTMENT.—Under the Constitution the Legislature has no power by concurrent resolution, to appoint committees or to continue committees already appointed, for the purpose of making investigations after the Legislature has adjourned.

5. LEGISLATURE—ADJOURNMENT—CONTINGENT EXPENSES OF COMMITTEE.—Expenses incurred by a legislative committee appointed by joint resolution of both houses of the General Assembly, can not be charged against funds appropriated for contingent expenses, where the expenses were incurred after the adjournment of the Legislature *sine die*.

6. STATE GOVERNMENT—LEGISLATIVE COMMITTEE—APPROPRIATION FOR EXPENSES.—Under art. 5, § 29, Const. 1874, the expenses of a committee appointed by the General Assembly to make certain investigations, can be paid only after the passage of a bill making the specified appropriation.

Appeal from Pulaski Chancery Court; *John E. Martineau*, Chancellor; affirmed.

### STATEMENT BY THE COURT.

The last Legislature, by concurrent resolutions, authorized the appointment, by the presiding officers of both houses, of two joint committees for the purpose of investigating certain State departments and institutions. One of the resolutions provided for the appointment of a special committee to investigate the State charitable institutions, and "to make a thorough investigation of the State Hospital for Nervous Diseases and a thorough auditing of the accounts." The other resolution authorized the appointment of a committee "to investigate and examine the books, accounts and files of the several departments of the State government and of the State in-

stitutions. The resolutions empowered the committee to take testimony, employ auditors of account, etc.

Just before the adjournment of the Legislature concurrent resolutions were passed by a *viva voce* vote, which were duly enrolled and signed by the Governor. One of these resolutions provided that a committee consisting of certain members of the committee already appointed should constitute a committee "to continue the work of auditing the several departments of the State government and of the different institutions of the State" (naming them), and authorized the committee to continue the work until the same was completed, and granting the committee power to "recommend a uniform system of accounting for the different State institutions." The resolution provided for the printing of five hundred copies of their report; and "that the said committee shall for their work receive the same per diem allowed to members of the General Assembly, and the expenses of the said committee and the expert accountants, auditors, stenographers employed by them and printing and postage, shall be paid out of the contingent expenses of the General Assembly, upon vouchers issued by the secretary of Senate directed to the Auditor, who shall draw his warrant on the Treasurer, who shall pay the same." It further provided that when the work of the committee was completed it should make final report to the Governor.

The other joint resolution had a similar provision, constituting the special committee that was appointed to investigate the State charitable institutions a special committee to investigate and audit the accounts of the State Hospital for Nervous Diseases, and provided that it be likewise constituted a committee to continue their work until the investigation and auditing was completed; also allowing the members of the committee the same per diem as allowed to members of the General Assembly, and providing "that the expenses of said committee in the use of expert accountants, stenographers and for

printing and postage shall be paid out of the ''contingent expenses of the said committee,'' and shall be paid by vouchers issued by the secretary of the Senate, directed to the Auditor, who shall draw his warrant on the Treasurer, who shall pay the same.''

These committees continued their sittings after the Legislature adjourned, incurring expenses for witnesses, expert accountants and per diem of the members of the committees.

Appellee, Jo Johnson, for himself and all other taxpayers of the State, instituted this suit in the Pulaski Chancery Court, setting up in his complaint the above facts, and praying that the Auditor be enjoined from issuing, and the Treasurer be enjoined from paying, any warrants for expenses incurred under the concurrent resolutions.

Appellants filed a general demurrer to the complaint. The court overruled the demurrer and entered a decree granting the prayer of the appellee, and this appeal has been duly prosecuted.

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellants; *Elmer J. Lundy* and *L. E. Sawyer,* of counsel.

1. The Legislature has the power by concurrent resolution to continue the work of investigation by committees after the expiration of the term. This is a recognized power of legislative bodies, a legitimate exercise of legislative function, which can be exercised where there is no constitutional inhibition. There is no express limitation in our Constitution. 49 Pac. (Kan.) 160; 55 S. E. 910; Cushing's Law & Practice of Legislative Assemblies, 737; *Id.* 930; *Id.* 2043; 30 L. R. A. 261; 71 Ark. 196; 16 Ind. 497; 40 Miss. 268.

2. While members of the committees are not now members of the Legislature as contemplated in Constitutional Amendment No. 11, these committees are agencies of the Legislature and their payment from the contingent fund of that body could be authorized, as was done by the

Legislature of 1915 by an act setting aside a certain amount of money for the contingent expenses of the Legislature. 71 Ark. 193.

The General Assembly is the judge of what are its contingent expenses, and it would be superfluous to require a special act providing for the expenses of these specific committees.

3. It is only while the Legislature is in session that members thereof can not receive any further *per diem* for their services after the expiration of the constitutional limitation of sixty days, regular session, and fifteen days special session. The Legislature is not now in session. The committees are not serving during the session, nor as members of the Legislature. It is not contemplated by the amendment that such committees should be required to do their work without receiving pay for their services. Their work is necessary, it is a prerogative of the Legislature to provide for the continuance of their work after the expiration of the term, and the General Assembly has the right to name their compensation.

4. Appellee's objection to the language of the concurrent resolutions continuing the work of the committee investigating the charitable institutions, is without merit. True, the provision of the resolution for the payment of the contingent expenses reads that it shall be paid out of the "contingent fund of the committee," whereas, the words "General Assembly" should have been written for the word "committee;" but the only reasonable construction is that the Legislature had reference to the contingent fund of the General Assembly. It is the duty of the court to construe the resolution so as to give it force and effect rather than defeat the intention of the Legislature by giving it a literal construction which would make it absurd on its face.

*Jo Johnson,* for appellees.

The resolutions for the continuance of the committees have not the force and effect of laws, because not passed in accordance with the provisions of law, and all committees expired at and with the expiration of the term

of the General Assembly. Art. 5, section 21, Const.; 71
Ark. 193; 74 S. W. 298; art. 5, sec. 28, Const.; Amendment
No. 11, Acts 1913, p. 1525; 58 Kan. 368; 49 Pac. 160; 40
Miss. 268; 16 Ind. 497; 61 W. Va. 49; 55 S. E. 910; 117 N.
C. 145, 30 L. R. A. 261.

WOOD, J., (after stating the facts).  1.  The first
question is, did the General Assembly have power, by
concurrent resolution, to continue its committees for the
purposes expressed in the resolutions after the adjourn-
ment *sine die?*

For the purpose of obtaining information looking to
the enactment of laws to meet the requirements of Gov-
ernment, the appointment of committees by either branch
of the Legislature, or by the concurrent action of both
branches, is absolutely necessary for the efficient dis-
charge of legislative functions, and is recognized under
our systems of Government, both State and National.
Ordronaux Constitutional Legislation, p. 373.

When such resolutions are constitutionally adopted
concerning a subject-matter within the proper sphere for
such resolutions they may have the force and effect of a
law. Our own Constitution has recognized concurrent res-
olutions as one form in which the Legislature may express
its will, and when it is expressed in the manner pre-
scribed, and concerning those matters within the legiti-
mate scope of concurrent resolutions, such resolutions
may have the force and effect of law.  Yet they were not
regarded by the framers of our Constitution as of the
same dignity and importance as a bill.  The same solem-
nity and strictness is not required for the adoption of
resolutions, as is to be observed in the passage of bills,
except when the resolutions are disapproved by the Gov-
ernor.  Const. of Ark., art. 6, sec. 16.  Concurrent resolu-
tions are necessary, but have the force and effect of law
only within the limited sphere incident to the work or
legislation which the Legislature may complete before its
final adjournment.

In Congress a joint resolution is regarded as a bill.
See Cushing's Law and Practice of Legislative Assem-

blies, p. 93. And in many of the States joint resolutions are recognized as equivalent to laws enacted by bill. See *State* ex rel. *Peyton* v. *Cunningham,* 18 Am. & E. Ann. Cas., p. 707, case note.

But such is not the case under our Constitution. Article 5, section 19, provides: "The style of the laws of the State of Arkansas shall be: 'Be it enacted by the General Assembly of the State of Arkansas.' "

Section 21 provides: "No law shall be passed except by bill." And section 22 provides: "Every bill shall be read at length on three different days in each house, unless the rules be suspended by two-thirds of the house, when the same may be read a second or third time on the same day; and no bill shall become a law unless on its final passage the vote be taken by yeas and nays, the names of the persons voting for and against the same be entered on the journal and a majority of each house be recorded thereon as voting in its favor."

(1) Thus a clear distinction is made between bills and concurrent resolutions. The one can not take the place of the other. All laws must be passed by bill. Concurrent resolutions can not be used to enact laws.

(2) Now, an investigation into the management of the various institutions of the State and the departments of the State Government is at all times a legitimate function of the Legislature. When the Legislature of 1915 assembled, it was a matter of common knowledge that the State treasury was depleted, the State heavily indebted, and there were charges of mismanagement on the part of those having control of the State charitable institutions. Under these circumstances, it was peculiarly appropriate that the Legislature, in the interest of economy and honesty in all the departments of Government and the management of its State charitable institutions, should institute an investigation to ascertain the facts as a basis for any remedial legislation that it might deem necessary.

(3) As the only efficient method of making the investigation and procuring the information desired, the General Assembly, by concurrent resolution, appointed

its committees, and these committees reported that they were not able to complete their work and make report before the time for the expiration of the session under the Constitution. The committees were the agencies of the General Assembly which created them, and so long as the Legislature was in session, it had full control over them. When it became apparent near the close of the session that the committees would not have time to make the investigation and procure the information contemplated for the purposes of any present legislation it was not only within the power of the Legislature, but was a proper exercise of that power, for it to continue the work of the investigation for the information of the Governor and the people generally, and as a guide for any future legislation that might be necessary. But this continuation or reappointment of the committees for the important work outlined for them after the adjournment of the Legislature was not a proper subject-matter for concurrent resolution. It could only be done by a bill enacting a law to that effect.

(4)   Under our Constitution, the Legislature has no power, *by concurrent resolution,* to appoint committees or to continue committees already appointed for the purpose of making investigations after the Legislature has adjourned. The principle controlling this question was announced by this court in *Tipton* v. *Parker,* 71 Ark. 193-196. There the question was as to whether the Senate had authority to direct a committee to make certain investigations after the adjournment of the Legislature and report its findings to the Governor. In that case we said: "The committee, being the mere agency of the body which appointed it, dies when the body itself dies, unless it is continued by law; and it is not within the power of either house of the General Assembly to separately enact a law, or pass a resolution having the force and effect of a law. To do this requires a majority of each house voting in its favor. Const. 1874, art. 5, sec. 23.

"The only legitimate office, power or duty of a committee of the Senate, in the absence of a law, prescribing

other functions and duties, is to furnish the Senate which appointed it with information, and to aid it in the discharge of its duties."

It was there distinctly ruled that the committee dies when the body creating it dies, unless the committee is continued by law. The court, by the language used in that case, did not mean to hold or indicate, even by indirection, that a committee of the Legislature could be continued by a concurrent resolution beyond the adjournment (*sine die*) of the Legislature. While the writer is the only member of the present court who participated in that decision, yet the majority of us concur in the view therein expressed, that to continue or appoint a committee whose work of investigation is to go on beyond the session of the body which created it, requires the enactment of a law by bill, passed in the manner prescribed by the Constitution.

The principle announced in *Tipton* v. *Parker, supra,* and here reiterated, is not only sound, but it is supported by the weight of authority in this country having Constitutions similar to our own. See *State* ex rel. *Peyton* v. *Cunningham,* 18 A. & E. Ann. Cas. 705, and authorities cited in note.

In jurisdictions where the Constitution expressly recognizes joint resolutions as equivalent to laws enacted by bill, such resolutions, when duly passed under the Constitution, are given the force and effect of laws. Such is the case under the Constitution of the United States and some of the States. As a fair illustration of this may be mentioned *Olds* v. *State Land Commissioner,* 134 Mich. 442, 86 N. W. 956. There the Constitution provides: "Every bill and joint resolution shall be read three times in each house before final passage thereof. No bill or joint resolution shall become a law without the concurrence of a majority of all the members elected to each house." Of course, under such constitutional provision a concurrent resolution, when constitutionally passed, becomes a law the same as a law enacted by bill. But, as we have already observed, under a Constitution like ours, a concurrent resolution duly passed is not a law, and can

not be used as a substitute for a bill. *Mullan* v. *State,* 114 Cal. 578-587; *Lithographing Co.* v. *Henderson,* 18 Col. 259; *Boyers* v. *Crane, Auditor,* 1 W. Va. 176; *May* v. *Rice,* 91 Ind. 546. See, also, *Hiram B. Burritt* v. *Commissioners of State Contracts,* 120 Ill. 322.

Counsel for appellants rely upon the case of *In re Davis,* 49 Pac. 160 (Kans.) There a committee was appointed under a concurrent resolution to investigate certain charges of bribery. The resolution itself did not expressly provide for the committee to continue its investigation after the adjournment of the Legislature creating it. The Supreme Court said: ''The concurrent resolution under which the committee claims the right to act contains no directions on the subject, and if the question were to be determined solely on the resolution itself, it would follow that the committee is without power to proceed. But in the act making appropriations for miscellaneous purposes the ninety-fifth paragraph reads as follows: ''There is hereby appropriated $3,000 to pay expenses of committee officers, clerks, stenographers, witnesses and other necessary expenses incurred in an investigation for bribery, as recited in Senate resolution No. 26, or so much thereof as may be necessary.'' Then, after reciting other provisions of the act, the Supreme Court continues: ''This act was approved March 15, and appears as chapter 11 of the Laws of 1897. The clause quoted lacks much of being clear or explicit, but it seems to contemplate a session of the committee after the 15th of May, rather than before, and evidences an intent on the part of the two houses that the committee should sit after final adjournment.''

Thus it appears that the Supreme Court of Kansas upheld the right of the committee to proceed with the investigation after adjournment of the Legislature, not on any authority contained in the concurrent resolution, but on the authority of an act in which the Legislature manifested its intention to have the investigation continued after final adjournment of the Legislature.

In the instant case the Legislature attempted to do by concurrent resolution that which they had no power to do, but which they did have the power to do by an act, as was done *In re Davis, supra.*

II.   Our conclusion on the first proposition makes it unnecessary for us to discuss the question as to whether the expenses incurred by the committees could be paid out of the contingent expenses of the Legislature. But on account of the importance of the question, we will consider this, as it affords an additional reason for affirming the decree of the chancery court.

(5)   This question is likewise ruled by *Tipton* v. *Parker, supra,* where we said: "The expenses of this Senate committee were not incident to any legislation originating in the Senate, and could not properly be classed as contingent expenses of that body." The same doctrine applies here to the expenses of these committees. They were not incident to any legislation originating in the General Assembly of 1915, and could not be classed as contingent expenses of that body. When the Legislature of 1915 adjourned *sine die,* there could be no future contingent expenses of that Legislature except those that were necessary to enroll and put in shape for publication the laws that had been already enacted. It would be a contradiction in terms to say that there could be contingent expenses of a Legislature after that Legislature had ceased to exist.

(6)   The act making appropriations for contingent expenses of the Legislature nowhere makes appropriation, as was said *In re Davis, supra,* for the payment of expenses of committees that had been continued for the purpose of making certain investigations. Article 5, section 29, of the Constitution, provides: "No money shall be drawn from the treasury except in pursuance of specific appropriation made by law, the purpose of which shall be distinctly stated in the bill."

Even if the Legislature, by concurrent resolution, could have continued its committees after final adjournment, it could not by resolution under the above provision

of the Constitution, appropriate the money necessary for the payment of the expenses of such committees out of the funds appropriated to pay the contingent expenses of the Legislature. To do this would have required a bill making the specific appropriation. *May* v. *Rice, Auditor,* 91 Ind. 546. See, also, *Reynolds* v. *Blue,* 47 Ala. 711.

It follows that the decree of the Pulaski Chancery Court is correct, and it is therefore affirmed.

KIRBY, J., dissenting. SMITH, J., concurs in the judgment.