RUSSELL v. CONE.

Opinion delivered May 25, 1925.

1. STATES—APPOINTMENT OF LEGISLATIVE COMMITTEE.—Amendment 8 to the Constitution, fixing the *per diem* of members of the Legislature, does not deprive the Legislature of the power to appoint committees to serve after expiration of the session to complete its records.

2. STATES—VALIDITY OF STAMP ALLOWANCE TO COMMITTEE.—Acts 1925, No. 167, allowing members of a committee appointed to complete the work of the Legislature after adjournment $1 per day in stamps in addition to $6 per day in money, was not invalid; the compensation for services on such committee not being prescribed or limited by the Constitution.

3. CONSTITUTIONAL LAW—LEGISLATIVE QUESTION.—Whether a committee of unnecessary size was appointed by Acts 1925, No. 167, to complete the work of the Legislature after adjournment is a political question to be decided by the Legislature in enacting and by the Governor in approving the bill, not by the court, which cannot review questions involving only legislative discretion.

4. OFFICERS—APPOINTMENT OF LEGISLATORS.—Acts 1925, No. 167, appointing a legislative committee to complete the records after expiration of the session, *held* not in conflict with Const., art. 5, § 10, as creating new offices and appointing members of the Legislature thereto; the act merely imposing additional duties upon the members of the committee.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*Emerson & Donham,* for appellant.

*H. W. Applegate,* Attorney General, and *John L. Carter,* Assistant, for appellee.

SMITH, J. Appellant filed a complaint in the Pulaski Chancery Court, alleging that he was a citizen and taxpayer of the State, and that the defendants, Cone and Sloan, were respectively the Auditor and the Treasurer of the State. That the General Assembly, at its regular 1925 session, had, by act No. 167, entitled "An act for the completion of the records of the work of the Forty-Fifth General Assembly," provided and required that seventeen members of the Senate of the said Assembly and seventeen members of the House of Representatives of the Assembly should remain on duty as members of such Assembly after adjourning on March 12, 1925, for a period of time expiring not later than April 23, 1925, for the purpose of completing the work of the Assembly, and that, for such services, sixteen of said senators and sixteen of the representatives should receive the sum of $6 each per day, and that the president of the Senate and the Speaker of the House of Representatives, who were made members of said committee, should receive $8 each per day, and all of said senators and representatives should receive, in addition, the sum of $1 per day for stamps during the time of their said service

It was further alleged that vouchers covering such services had been presented to the Auditor, who would issue warrants thereon, which the Treasurer of the State would cash, unless they were enjoined from so doing, and there was a prayer that the Auditor and Treasurer be enjoined from so doing.

By an amendment to the complaint it was alleged that none of said senators and representatives who were named in said act 167 had, in fact, performed any services whatever, and that there was no occasion or necessity for the appointment of said committee, and that the act was a mere subterfuge whereby the said senators and representatives might draw money from the State treasury, in violation of the Constitution of the State.

To this complaint and amendment thereto an answer was filed, denying, in general terms, the allegations thereof, and a demurrer was also filed, alleging that the complaint did not state a cause of action.

The complaint also contained allegations to the effect that the bill was not properly passed, to which an answer was filed denying that allegation, but, at the hearing, it was stipulated that the journals of both the Senate and the House of Representatives disclosed that act 167 was properly passed and had been duly signed and approved by the Governor, and this allegation has therefore been abandoned.

Testimony was offered and was heard by the chancellor at the trial as to the services performed by said committee, and the court found the fact to be that said act was not a subterfuge, and that services were performed by the members of the committee named in said act; and the complaint was dismissed as being without equity, and the plaintiff has appealed.

Without reviewing the testimony heard by the court below, it may be summarized by saying that it was to the effect that only a few of the senators or representatives could or did work at any one time, and that a number of them had done no work at any time, yet all of them had

received vouchers entitling them to warrants from the Auditor of State, which would be paid by the Treasurer of the State out of the appropriation made by the General Assembly for that purpose.

In this connection it may also be said that the act under review provided that, in addition to the senators and representatives who were named in the act, the Secretary of the Senate, with two assistant secretaries, the journal clerk, with two assistants, the bill clerk, the enrolling clerk, and one assistant, and nineteen extra clerical helpers who had been named by the president of the Senate, should likewise be employed, and that a like number of employees on the part of the House were also provided for. A grand total of forty-six persons on the part of the Senate and a like number on the part of the House were thus provided for by the act.

The testimony shows that only fifteen days were required to enroll the bills for presentation to the Governor, and that a comparatively small number of persons could have performed this service within that time. No injunction was prayed in regard to paying these clerks, and the court made no order in regard to them.

It is insisted, for the reversal of the decree of the court below, that the act is unconstitutional and void, for the reason that there is no authority in law for the appointment of members of the General Assembly after the adjournment of the session thereof, and further, that it is apparent, from the very number of members appointed in comparison with the amount of work which they might perform, that the act was a mere subterfuge to increase the compensation of the members named in the act beyond that allowed by the Constitution, and that the act is therefore unconstitutional and void.

We think the controlling question in the case, so far as this appeal is concerned, is the power of the Legislature to appoint the committee at all.

This question was first considered in the case of *Dow* v. *Beidelman*, 49 Ark. 325, where the court had

occasion to construe article 6, § 15, of the Constitution, which reads as follows: "Every bill which shall have passed both houses of the General Assembly shall be presented to the Governor; if he approves it, he shall sign it; but, if he shall not approve it, he shall return it, with his objections, to the house in which it originated, which house shall enter the objections at large upon their journal, and proceed to reconsider it. If, after such reconsideration, a majority of the whole number elected to that house shall agree to pass the bill, it shall be sent, with the objections, to the other house, by which likewise it shall be reconsidered; and, if approved by a majority of the whole number elected to that house, it shall be a law; but, in such cases, the vote of both houses shall be determined by 'yeas' and 'nays,' and the names of the members voting for or against the bill shall be entered on the journals. If any bill shall not be returned by the Governor within five days, Sunday excepted, after it shall have been presented to him, the same shall be a law in like manner as if he had signed it, unless the General Assembly, by their adjournment, prevent its return, in which case it shall become a law, unless he shall file the same, with his objections, in the office of the Secretary of State, and give notice thereof by public proclamation within twenty days after such adjournment."

In construing this section of the Constitution the court there said: "Nothing in this language implies that all bills must be transmitted to the Governor before the adjournment of the Assembly. He is prevented by the adjournment from returning the bill, whether the bill is in his hands before it adjourns or reaches his hands afterwards. The term of members does not expire when it adjourns, nor do all the functions and powers of its officers then cease. It may often happen, in the case of bills passed in the closing hours of a session, that there is not sufficient time to enroll them properly and present them to the executive before an adjournment takes place. The effect is not that, under the circumstances, the bill

fails to become a law. Our constitutional provision differs materially in this respect from § 7 of article 1 of the Constitution of the United States.''

This question was next considered in the case of *Tipton* v. *Parker*, 71 Ark. 193, in which case the validity of a warrant issued to a member of the Senate for services performed on a committee after the adjournment of the session of the General Assembly was involved. The committee had been appointed under a resolution which directed that the members thereof should receive the same pay as when the Legislature was in session. The warrant was held invalid, but this was done only because the committee was provided for by resolution, and not by a bill regularly passed and which had been approved and had become a law. The court there said: ''The committee, being the mere agency of the body which appointed it, dies when the body itself dies, unless it is continued by law; and it is not within the power of either house of the General Assembly to separately enact a law, or pass a resolution having the force and effect of a law. To do this requires a majority of each house voting in its favor. Const. 1874, art. 5, § 23. The only legitimate office, power or duty of a committee of the Senate, in the absence of a law prescribing other functions and duties, is to furnish the Senate which appointed it with information, and to aid it in the discharge of its duties. The Senate alone has no power to appoint a committee to make an investigation after its adjournment and to make a report to another department of the government or to another session of the Senate or General Assembly. Ordronaux, Cons. Leg. p. 375.''

In the case of *Monroe* v. *Green*, 71 Ark. 527, § 15 of article 6 of the Constitution was again considered. The case involved the time and manner within which bills must be presented to the Governor for his consideration after the adjournment of the Legislature. The joint rules of the House and Senate relating to the enrollment and presentation of bills to the Governor were set out *in*

*extenso* in the majority opinion, which was written by Mr.
Justice HUGHES. These rules are identical, or sub-
stantially so, with the ones in force during the 1925
session of the General Assembly.

The right and duty of the Legislature to have bills
enrolled for presentation to the Governor, and to do this
with the aid of clerical assistance, was expressly recog-
nized, although the right of the Governor to waive this
requirement was also recognized.

There were four opinions in this case, two of which
were concurring opinions. The fourth and last was a
dissenting opinion by Chief Justice BUNN, but, in all
four of the opinions, the right of committees of the Gen-
eral Assembly to serve and to perform the functions for
which they were constituted after the adjournment of the
Legislature appointing them was expressly recognized.

Chief Justice BUNN took occasion to say that, if the
question were open for decision, he would hold otherwise,
but he stated that it had been so held in the case of *Dow*
v. *Beidelman, supra*, and that this decision had so long
been acquiesced in that great confusion and injustice
would prevail if that decision were not followed.

As pointed out by Chief Justice BUNN, the case of
*Dow* v. *Beidelman* was then sixteen years old, and twenty-
two additional years of acquiescence have since elapsed,
so that the confusion and injustice to which he referred
would, at this date, be much augmented if *Dow* v. *Beidel-
man* were not followed as correctly declaring the power
of the General Assembly in the matter of enrolling bills
and of presenting them to the Governor for his action
thereon.

It is insisted, however, that, since the adoption of
Amendment No. 8 to our Constitution, members of the
General Assembly cannot serve on committees of the
Legislature after the adjournment thereof, and that, if
they do so serve, they can receive no pay for such services.
This amendment reads as follows: "Each member of the
General Assembly shall receive six dollars per day for

his services during the first sixty days of any regular session of the General Assembly, and, if any regular session shall be extended, such members shall serve without further per diem. Each member of the General Assembly shall also receive ten cents per mile for each mile traveled in going to and returning from the seat of government, over the most direct and practicable route. When convened in extraordinary session by the Governor, they shall each receive three dollars per day for their services during the first 'fifteen days, and, if such extraordinary session shall extend beyond fifteen days, they shall receive no further per diem. They shall be entitled to the same mileage for any extraordinary session. as herein provided for regular sessions. The terms of all members of the General Assembly shall begin on the day of their election, and they shall receive no compensation, perquisite or allowance whatever, except as herein provided."

It is insisted that the necessary effect and the purpose of act 167 was to increase the compensation of the members of the committee, and that the act is void as offending against Amendment No. 8, set out above. It is insisted that this results from the decision of this court in the case of *Ashton* v. *Ferguson,* 164 Ark. 254.

In the case last mentioned each house had passed a resolution directing its chief clerical officer to issue warrants to all the members in the sum of a hundred dollars, covering stamps, telegrams and other incidental expenses incurred while attending the session of the Legislature. We held that those resolutions provided for an allowance or perquisite or additional compensation within the meaning of Amendment No. 8, and that the resolutions were therefore void. But the resolutions so held void related to the compensation of the members during a session of the General Assembly, while act 167 relates to the compensation of members of the Legislature serving as committees of the Legislature after the adjournment thereof.

Amendment No. 8 limits the terms of regular sessions to sixty days, and provides that, if a regular session is extended beyond that time, the members shall serve without further per diem. It likewise provides mileage which shall be paid each member who attends a regular session.

The amendment next deals with extraordinary sessions of the General Assembly, and provides that the members, when so convened, shall receive $3 per day for the first fifteen days of such a session, and that, if the extraordinary session is extended beyond fifteen days, the members shall receive no further per diem. The same mileage is allowed members who attend an extraordinary session as is allowed at a regular session.

Amendment No. 8 did not attempt to deal with any subject whatever except the length of the regular session and the per diem and mileage of the members during such regular session and the mileage and per diem of the members for any extraordinary session which might be called by the Governor.

In the case of *Hodges* v. *Dawdy,* 104 Ark. 583, in construing an amendment which had been adopted to the Constitution, the court said: "The amendment being the last expression of the popular will in shaping the organic laws of the State, all provisions of the Constitution which are necessarily repugnant thereto must, of course, yield, and all others remain in force. It is simply fitted into the existing Constitution, the same as any other amendment, displacing only such provisions as are found to be inconsistent with it. Like any other new enactment, it is a 'fresh drop added to the yielding mass of the prior law, to be mingled by interpretation with it.' *State* v. *Sewell,* 45 Ark. 387. In the construction of its terms, and in the determination of its scope and effect, the courts should follow settled rules of interpretation."

We find nothing in this amendment which deprived the Legislature of the power which the decisions rendered prior to its adoption declared the Legislature possessed,

of appointing committees which might serve after the expiration of a session.

The case of *Ashton* v. *Ferguson, supra,* which is relied upon by counsel for appellant, dealt with compensation of members serving as such during a session of the Legislature, and, as the resolutions under review in that case increased the compensation for such services, they were declared void as conflicting with Amendment No. 8.

The case of *Dickinson* v. *Johnson,* 117 Ark. 582, was decided April 19, 1915, which was, of course, subsequent to the adoption of Amendment No. 8. In that case the Legislature, at its 1915 session, passed a concurrent resolution which provided that certain members of the House and Senate should constitute a committee to audit the several departments and the different institutions of the State. The resolution further provided "that the said committee shall for their work receive the same per diem allowed to members of the General Assembly, and the expenses of the said committee and the expert accountants, auditors, stenographers, employed by them, and printing and postage, shall be paid out of the contingent expenses of the General Assembly, upon vouchers issued by the secretary of Senate directed to the Auditor, who shall draw his warrant on the Treasurer, who shall pay the same."

We there affirmed the decree of the chancery court enjoining the Auditor from issuing and the Treasurer from paying any warrants for expenses incurred under this concurrent resolution, but this was done because the committee was provided for by a resolution, and not by a bill for that purpose, regularly passed and approved by the Governor.

We there said that it was peculiarly appropriate, in the interest of economy and honesty in all the departments of government, that such an investigation should be made as the resolution provided for.

It was there further said: "The committees were the agencies of the General Assembly which created

them, and, so long as the Legislature was in session, it had full control over them. When it became apparent, near the close of the session, that the committees would not have time to make the investigation and procure the information contemplated for the purposes of any present legislation, it was not only within the power of the Legislature, but was a proper exercise of that power, for it to continue the work of the investigation for the information of the Governor and the public generally, and as a guide for any future legislation that might be necessary. But this continuation or reappointment of the committees for the important work outlined for them after the adjournment of the Legislature was not a proper subject-matter for concurrent resolution. It could only be done by a bill enacting a law to that effect. * * *

"In the instant case the Legislature attempted to do by concurrent resolution that which they had no power to do, but which they did have the power to do by an act, as was done *In re Davis,* 49 Pac. 160 (Kan.)."

There was involved in that case not only the power of the General Assembly to appoint committees which might serve after the adjournment of a session of the General Assembly by concurrent resolution, but also the power to pay for such services out of the fund provided to meet the contingent expenses of the Legislature.

In disposing of this last question we said that the decision that such committees could be appointed by a bill, but not by a resolution, made it unnecessary to decide the second question, but, in view of the public importance of the question, we proceeded to do so. In the decision of this question it was said: "When the Legislature of 1915 adjourned *sine die,* there could be no future contingent expenses of that Legislature except those that were necessary to enroll and put in shape for publication the laws that had been already enacted. It would be a contradiction in terms to say that there could be contingent expenses of a Legislature after that Legislature had ceased to exist."

"The act making appropriations for contingent expenses of the Legislature nowhere makes appropriation, as was said *In re Davis, supra,* for the payment of expenses of committees that had been continued for the purpose of making investigations. Article 5, § 29, of the Constitution provides: 'No money shall be drawn from the treasury except in pursuance of specific appropriation made by law, the purpose of which shall be distinctly stated in the bill.'

"Even if the Legislature, by concurrent resolution, could have continued its committees after final adjournment, it could not by resolution, under the above provision of the Constitution, appropriate the money necessary for the payment of the expenses of such committees out of the funds appropriated to pay the contingent expenses of the Legislature. To do this would have required a bill making the specific appropriation (citing cases)."

It thus appears that the case of *Dickson* v. *Johnson, supra,* decided that committees might be appointed to serve after the adjournment of the session which appointed them, and that the members of the committee may be compensated for such services, but that this could be done only by a bill, and not by a resolution.

It is pointed out that act 167 allowed the members of the committee a dollar each per day in stamps, and that the testimony taken at the trial shows that they were required to perform no duty which made these stamps necessary, and that, as the act allowed six dollars per day in money, which is the compensation allowed by Amendment No. 8 for members during a regular session, the act is void because of this additional allowance of a dollar per day.

The answer to this contention is, however, that the members were serving, not as members of the Legislature in session, but as a committee of the Legislature after the adjournment of the session, and the compensation for such services not having been prescribed and

limited by the Constitution, might be fixed at such sum as the General Assembly saw proper.

The point has been raised in our consultation that the undisputed testimony shows that a committee of unnecessary size was appointed, and that the right to appoint clerks was grossly abused, and that a reasonable number only could be appointed. Appellant does not raise this question, but, in view of its public importance and the fact that it forms the basis of the dissent of two of the judges, we proceed to discuss it. *Dickson* v. *Johnson, supra.*

We do not consider whether a committee of unnecessary size was appointed, as this court can determine only the power of the Legislature to appoint the committee at all. This is the judicial question which we have a right to decide, and have answered affirmatively. But, once this right is conceded, the size of the committee becomes a political question which we have no right to review. This is a question to be decided by the General Assembly in enacting, and the Governor in approving, the bill which creates the committee.

We recognized this limitation upon our jurisdiction in the case of *Ashton* v. *Ferguson, supra,* where we said that we could only review the power of the Legislature to pass the resolutions there under review, and that, if no more was involved than the exercise of the power, "the determination of the case would be easy," that is, there would be nothing for us to decide, as the courts cannot review questions involving only legislative discretion.

No authorities were there cited to sustain the proposition that courts are without jurisdiction to review the discretion of the Legislature in the exercise of a power it possesses. If authority were necessary, an endless number might be cited, but the case of *Little Rock* v. *North Little Rock,* 72 Ark. 195, will suffice. Mr. Justice RIDDICK, speaking for the court, there said: "It is equally clear that we cannot inquire into the motives of the Legislature in passing the act nor into the means by which they

were induced to enact it. The allegation in the complaint that the passage of the act was obtained in a fraudulent and surreptitious manner cannot be considered, for we have no right to inquire into or consider such matters. If courts should enter upon such inquiries, and annul laws because they seem to be unwise or impolitic, or because improper influence was brought to bear upon the Legislature to secure their passage, no one could rely upon any law until it had been submitted to the courts for their approval. The adoption of such a rule would invest the courts with legislative as well as judicial powers, and would be clearly in violation of the provision of our Constitution which declares that one department of the government shall not exercise the powers conferred upon another and different department.'' In other cases it has been said that, if courts should usurp the function of reviewing matters of legislative discretion, the laws of the land would become as uncertain as the terms of horse trades.

The decree of the court below is correct, and is therefore affirmed.

HUMPHREYS, J., (dissenting). The majority opinion announces the rule that the Legislature has power by bill to appoint holdover committees to complete the journals and enroll the bills and present them to the Governor for his approval, or disapproval, without limitation as to number, clerical help, or compensation. It is conceded by the majority that obviously a much larger number of committeemen and helpers were provided for in the bill than necessary. If it had not been conceded, it is a demonstrable physical fact that it did not require between ninety and one hundred persons to wind up the business of the Legislature. The history of the State has revealed that the President of Senate, Speaker of the House, clerk of the House and his regular assistants, secretary of the Senate and his regular assistants, the journal clerks and their regular assistants, the regular enrolling committees of the two houses and their clerks

or stenographers have been sufficient in number to pre-
pare the journals for filing and the bills for presentation
to the Governor. None of the cases cited in the majority
opinion lay down the rule that the Legislature has
unlimited authority to create by bill unnecessary hold-
over committees, or to provide the committees with
unnecessary employees, or to provide unreasonable com-
pensation for them. The majority has laid down this rule
in the instant case under the conviction that the Legis-
lature has unlimited power, if it has power at all, to do
a thing. It is believed by the majority that a legislative
power may be exercised by that body in an unreasonable
manner. In other words, that the Legislature has
unlimited discretion to exercise any one of its powers
in any manner it may please. In the opinion of the
minority, this court in the past committed itself to an
exactly contrary rule or doctrine. This court said in
the case of *Louisiana & Arkansas Railway Company* v.
*State,* 82 Ark. 12, "That the Legislature has the general
power of supervision of railroads, and the power to
require them to establish and maintain stations at points
designated by the legislature, cannot be doubted. It is
equally true, however, that such power must be exercised
reasonably and with due regard to the rights of corpora-
tions, for they have rights which the Legislatures as
well as courts must respect. But who is to be the judge
whether or not the power has been exercised reasonably
or unreasonably and arbitrarily?   *    *  *  We think the
power of the Legislature in this respect, and the decree of
conclusiveness to be accorded to its determination of the
necessity and propriety of its action, are the same as in
other instances where the Legislature is to determine
the facts which call for direct legislation. The greatest
latitude should be given to the law-making body in
determining the necessity for its acting; but the power
must not be exercised arbitrarily and without reason."
The third syllabus of the case is as follows:

"A legislative determination that a station should be
erected and maintained at a certain point is conclusive

unless the courts can declare, as a matter of law, that such determination is arbitrary and unreasonable." The syllabus is taken almost bodily from an opinion of the United States Supreme Court in the case of *Norwood* v. *Baker,* 172 U. S. 269, cited by this court in the case of *Louisiana & Arkansas Railroad Company* v. *State, supra.*

Again, this court said in the case of *Coffman* v. *St. Francis Drainage District,* 83 Ark. 54, that (quoting syllabus No. 1), "While the Legislature, in creating a drainage district, may provide what lands shall be assessed for the improvement, and the extent of such assessment, the courts will interfere where the act of the Legislature is such an arbitrary abuse of the taxing power as would amount to a confiscation of the property without benefit." The same rule applies where a legislative assessment of benefits is on its face discriminatory between the different tracts of land included in the district.

Again, it has been held by this court that the Legislature has the power to determine whether the required notice was given for the passage of a local bill, and that when exercising the authority within the power, it was a legislative question and not a judicial one; but, notwithstanding this ruling, when it became apparent or obvious that the notice could not have been given between the calling and convening of the special session of the Legislature, the court did not hesitate to say that the Legislature exceeded its authority. *Booe* v. *Road Improvement District,* 141 Ark. 140.

Mr. Justice WOOD and the writer are of the opinion that the extent of or limitation upon any power which the Legislature may possess is as much a judicial question as whether it has power to do the thing; and further, whether a power possessed by the Legislature has been exercised in a reasonable manner or in an arbitrary, unreasonable manner, is also a judicial and not a political question. In the instant case we think the power was exercised in an unreasonable manner and that the act, in so far as same is unreasonable, should be declared to

be void. For the reason assigned, we most respectfully dissent from the majority opinion.

SMITH, J., (on rehearing) It is insisted in the petition for rehearing that, inasmuch as we held in the original opinion that the members of the General Assembly were serving, not as members of the Legislature in session, but as a committee of the Legislature after the adjournment of the session, the act of the Legislature is in conflict with § 10 of article 5 of the Constitution, which provides that "No Senator or representative shall, during the time for which he shall have been elected, be appointed or elected to any cival office under this State."

We do not agree with counsel in this contention. The act does not create or confer an office. It was not required that the members of the General Assembly who were named as members of the committees should take an oath of office before entering upon the performance of the duties imposed upon them by the act. Certain duties were imposed upon these committee members which were not incumbent upon members of the General Assembly who were not members of the committee, but these were duties which were to be performed by the committee members as members of the General Assembly. These duties related to the work of the General Assembly of which the committee were members and were incident to their membership in the General Assembly, and there was therefore no creation of new offices.

The petition for rehearing is therefore denied.